THE STATE v. SAM DAMERON, Appellant.—6 S. W. (2d) 869.

Division Two, May 25, 1928.

*Lionel Davis* for appellant.

*North T. Gentry*, Attorney-General, and *J. D. Purteet*, Special Assistant Attorney-General, for respondent.

WALKER, J.—The defendant was jointly charged by information with one Maggie Burris, in the Circuit Court of Howard County, with grand larceny in having stolen chickens in the nighttime. A severance was granted the defendant and upon a trial he was convicted and sentenced to two years' imprisonment in the penitentiary. From this judgment he appeals.

The defendant, a negro, lived with two members of his race, to-wit, Maggie Burris, his co-defendant, and her husband, on a farm a few miles from Fayette. On the morning of October 29, 1926,

Farris Graves, a negro farmer who lived in the neighborhood of the Burris home, discovered that a large number of his chickens that he had seen in his yard the day before, were missing. In company with a deputy sheriff of Howard County, he went to Boonville, where he found in a poultry house seven or eight chickens which he identified as his property. These chickens, with a number of others, had been sold to the poultry dealer the day they were identified by Graves, by a negro woman subsequently shown to have been Maggie Burris. She in company with another negro woman came to the poultry house in Boonville in a car in which there were two negro men. Upon the chickens being brought out of the car by the two women and while they were consummating the sale, the car with the men in it was driven away. It was shown that the defendant was one of the men in the car; the defendant himself so testified. Maggie Burris, who was examined as a witness for the State, testified that the morning before she sold the chickens at Boonville she asked the defendant, who was boarding with her, if he would not take her and some of her chickens to Boonville to enable her to sell them; that he consented and in compliance with her request he took her and twenty-one of her chickens, which she states she had raised, to Boonville where she sold them. The testimony of the defendant is substantially the same as that of Maggie Burris, except that his testimony as to the ownership of the chickens is limited to his having seen a number of chickens in the yard at Maggie Burris's house at different times before he took her and a portion of them to Boonville.

Farris Graves, who asserted ownership to a part of the chickens sold by Maggie Burris, identified them by their toes having been clipped. Maggie Burris testified that a part of the chickens she sold were thus marked. She was corroborated in this statement by other witnesses, who stated that they were present at her house when the clipping was done.

Upon this testimony the defendant was found guilty.

I. Moral convictions as to the truth or falsity of any of this testimony will not serve to sustain this conviction, unless, considered in its entirety, it presents evidence of a substantial nature to establish the commission of the offense. Graves, who claimed to have owned the chickens, could only identify seven or eight of the twenty or more and that by their clipped toes alone, which marks of identification Maggie Burris stated her chickens likewise possessed.

A summary of this testimony is therefore to the effect that Graves missed some chickens. Maggie Burris, the day thereafter, had the defendant take her to Boonville, with about the number of chickens

missed by Graves, where she sold them and collected and retained the money paid for them by the poultry dealer. Defendant's connection with the transaction is limited to the fact that he conveyed her and the chickens to the market to enable her to dispose of them. If they were stolen there is nothing in the testimony on the part of the State upon which to base the conclusion that the defendant either participated in the taking of the chickens or had a guilty knowledge of the same. The fact that he conveyed her and the chickens to Boonville lends no color of guilt to the charge as against him, unless it had been shown he had some knowledge of her wrongful possession of them, of which there is none. While not doubting the veracity of Graves or attempting to measure the credence that should be given to his testimony, it is insufficient to fix the guilt of the charge upon the defendant. It may well have been true as defendant testifies, especially in view of the reputation for honesty established by him in the neighborhood where he had lived from boyhood, that, without any knowledge of Maggie Burris's connection with the crime, if she was so connected, he would convey her and the chickens to Boonville to enable her to sell them. He boarded with her and seeing, as others did, numerous chickens in her poultry yard, her possession and proposed sale of the number she was proposing to sell was not an incident to prompt a question or engender a suspicion as to their ownership. In addition, there is nothing in the record indicative of the defendant's possession or a claim of possession or an exercise of control or a participation in the disposition of the chickens or a sharing in the proceeds arising from the sale, to sustain the defendant's conviction. There is in short no substantial evidence of his guilt and it becomes our duty to reverse the judgment and discharge the defendant. It is so ordered. All concur.